May 14.
Judge Green
The appellants are executors of Thomas Miller, who, by his will, subjected his whole estate, real and personal, to be sold by his executors, for the payment of his debts. *441 He died seised of four tracts of land of great value; the two most valuable of which, were subject to incumbrances for the payment of large debts, not due at the time of his death. His personal assets were appraised to upwards of g 61,000; but the debts secured by the deeds of trust upon the said tracts of land, exceeded the whole amount of the personal assets. The appellees, who were creditors of Thomas Miller, severally instituted their suits against the executors for the recovery of their debts, all of which were due by simple contract, except one, which purported to be due upon a bond of the testator, signed by another for him. In the suit brought upon this paper, as the bond of the testator, the executors confessed a judgment for the «penalty of the bond,” to be discharged by the sum due. This judgment was confessed to Wiggleswortb, the assignee of the bond. In the other cases, judgments were rendered as follows : In that of Rice and Seabrook, upon a verdict, (what the plea was, does not appear.) The plaintiffs agreed to stay execution until the 1st of January succeeding, and that the judgment should not be considered as an admission or proof of assets : In that of Galt and Johnson, by the unconditional confession of the defendants; and upon this judgment, the defendants gave a forthcoming bond, which was forfeited: In that of Foi'bes, by the unconditional confession of the defendants. That of Isaac Curd was rendered upon the verdict of a jury, rendered upon issues made up upon the pleas of non assumpsit, fully administered, and debts of superior dignity ; and in this case, one of the defendants gave and forfeited a forthcoming bond. In that of Day, upon the admission of the defendants, that they could not gainsay the plaintiff’s action, and in this case a forthcoming bond was given by one of the defendants, and forfeited. In that of Brice, in like manner. In that of Martin, upon the finding of the jury upon the plea of non assumpsit; and a forthcoming bond has, in this case, been given and forfeited. All these judgments were de bonis testatoris.
*442 The appellants exhibited their bill against these creditors, praying an injunction to stay further proceedings on those judgments, upon the allegation, that the specialty debts secured by the deeds of trusfaforesaid, exceeded in amount the personal assets, and had a priority to the simple contract debts, in a due course of administration: that the executors had not opposed the judgments obtained upon the simple contract debts, because they were confident that the sales of the real estate, in aid of the personal, would be greatly more than sufficient to pay all the debts of- their testator, and that they had a power to dispose of the real estate for that purpose immediately ; but, that they now find, that they cannot dispose of the incumbered lands, without the consent of the creditors, who have liens upon those lands; and that owing to the great and unexpected depreciation in the value of real property, it is doubtful whether the whole estate, real and personal, will be sufficient for the payment of their testator’s debts) and thus, if they are compelled to pay the simple contract debts out of the assets, they may be bound to pay the specialty debts in part, out of their own estates. The injunction was refused, (except as to one defendant, whose answer negatives the peculiar grounds of the injunction as to him,) by the chancellor, awarded by the judges of the court of appeals, and dissolved by the court of chancery, upon the motion of some of the defendants, who had answered ; arid from this order of dissolution, the plaintiffs appealed.
Independent of the act of January, 1807, which provides, “ that no executor or administrator shall be liable “ to answer any debt or damages out of his own estate, “ beyond the assets which may have come to his hands, « in consequence of any false-pleading, mis-pleading, or « non-pleading, in any action now depending, or which .« may hereafter be brought,” &c. $ and, upon the ordinary principles of a court of equity, an executor might have relief in equity, whensoever from any cause beyond his *443 eontroul, lie could hot make his defence at law, so as to ensure justice to himself, or to the estate of his testator; as, if a portion of the assets of the estate in the hands of the executor, (without which the assets would not be sufficient for the payment of debts,) were in litigation ; so that the executor could not safely confess or deny the amount of assets in pleading at law, until the testator’s title was ascertained; as, in the case of Royal vs. Johnson, (a) in this court 5 or, where the testator had been executor, administrator or guardian, and had not settied bis accounts of administration or guardianship, and is indebted thereon, and his executor has not the means of ascertaining the amount which his testator may owe on such accounts. By statute, such debts have priority to all other debts, and the executor is bound to retain assets for their satisfaction. Yet, until the amount due from the testator could be ascertained, it would be impossible for the executor to protect himself by pleading at law7. In such cases, and in cases of fraud, accident or mistake, a court of equity should relieve upon its ordinary principle, that where a party has a right, and no adequate remedy at law, he is entitled to the assistance of that court. But, where a party has a complete defence at law, and does not lose the benefit of it by fraud, accident or mistake, a court of equity cannot assist him ; for otherwise, eve^y cause would be tried twice, once at law and once in equity. The act of assembly before referred to, did not enlarge the jurisdiction of a court of equity, but gave to the executor a strictly legal defence, which, before that act, he had not. Thus, a judgment before that act, in the original action against an executor, was conclusive evidence of assets in the hands of the executor, for the payment of the judgment; whether he omitted to plead altogether, or omitted to plead “ fully administered,” or debts of superior dignity, or pleaded falsely, or committed some mistake in *444 pleading; and tlie executor, although he might, after such a judgment, plead fully administered, or no assets, or no waste to an action on such a judgment for a devastavit, such a plea would not avail him.
For, the judgment would disprove his plea conclusively, and a court of equity could only interfere on the ground of fraud, accident or mistake. But, the statute abrogated this rule of the common law, and permitted the executor, after a judgment, to plead and give full proof of the state of the assets, in a suit for a devastavit, notwithstanding his false-pleading, mis-pleading, or non-pleading, in the oi’iginal action; except perhaps, whei'e the question as to the state of the assets, had been fully tried aad decided in the former action. In all cases not coming within this statute, where the executor would have been so concluded by the former judgment at the common law, he is still concluded; and a court of equity, cannot enlarge the operation of the statute, either by interfering to prevent a personal judgment against the executor, where he is so bound, or where there is no impediment to his defence at law; or after a personal judgment against him, by relieving him, when there was no impediment to his defence at law and there be no fraud, accident or mistake, such as justifies the interference of a court of equity, in all other cases.
Let us test the case at bar by these principles. It was well observed at the bar by the appellants’ counsel, that the will of Miller did not convei’t his x’eal estate into personal assets: it only creates a charge upon it for the payment of debts, in aid of the personal fund. It does not devise the lands to the executors, but only gives a power to sell for the payment of debts ¿ so that the lands were equitable assets at most, and not liable to the payment o£ debts in a course of administration, but only ratably, without regard to the dignity of the debts. It appears from the appellants’ own exhibits, that befoi’e any of the judgments in question were rendered against them, they *445 had the advice of three able attornies, that they had no authority to sell any of the lands until the personal estate was exhausted in the payment of debts. They should have applied the personal assets to the payment of debts, according to their dignity and legal priorities; and left the simple contract debts, if that became necessary, to be satisfied pari passu, out of the equitable assets. If they had pleaded the outstanding debts of superior dignity, to the actions upon simple contracts, this would have been the effect, and there was not the slightest impediment to, or embarrassment in, doing so. These debts were two only, completely ascertained by recorded deeds, of which they must be supposed to have had notice. It was their duty to themselves, the creditors, and the estate, to pursue this course; and if they had, neither they nor any other party interested, could possibly have been injured. They may yet, under the act of assembly, plead these specialty debts at law, against all the judgments rendered against them adversely, and upon which they have not given and forfeited forthcoming bonds; and there is no necessity, in relation to them, for the interposition of a court of equity. As those judgments confessed by the executors, or upon which they have given and forfeited forthcoming bonds, they do not come within the act of assembly; and for the same reason that they are bound at law, they are bound in a court of equity, unless they became so bound, by reason of such a fraud, accident or mistake, or in consequence of such a state of things as would justify the interposition of a court of equity upon its general principles. No fraud or mistake is pretended. The executors knew of the existence of the debts of superior dignity, and the quantity and value of the property of their testator, real and personal, at the time they confessed those judgments and gave those forthcoming bonds$ and they deliberately intended to confess the judgments and to give the bonds. They can, therefore, only claim relief upon the ground, that the depreciation in the value of the real property was *446 such an accident as a court of equity should relieve against. This has been likened at the bar, to a case in which the negroes of the estate had perished by pestilence, and the other property been destroyed by accidental fire. I will not say, that in case of such accidents as these, a court of equity ought not to afford relief. But, I am inclined to think, that it ought not; for, as to the property under the absolute controui of the executor, it should he converted into money, at least as early as the creditors could get judgments in a due course of law, and the money applied to the payment of the debts, and he ought not to hold it up at the risque of the creditors, of whose claims he has notice; and if not under the absolute controui of the executor, the property is not assets in his hands to be administered, and he is not bound, and ought not to treat it as assets, for which he is already responsible. In this case, the alleged depreciation of the real property, (the precise situation of which, as to their powers over it, in point of fact, was well known to the executors, and they cannot allege a mistake in point of law,) was not owing to any natural accident or great national convulsion. There is no proof in the record, of such depreciation, and the court can only proceed upon the general notoriety of the fact; and we know’, that long before these judgments were rendered, property had gradually and greatly depreciated, and was still in a course of depreciation ; and a further depreciation might justly have been anticipated. This depreciation was so gradual, that it can hardly be supposed, that it was very striking and alarming between the rendition' of the judgment in question, and the application for the injunction in this case; the judgments being in March, April and August, 1820, and the application for the injunction in December, 1820. It seems to me, that the appellants, not deceived by any one, and with full notice of all the facts which ought to have influenced them, in the course of their administration, have acted improvidently, and now seek to *447 be relieved against the effect of their deliberate acts, done upon full information of all the facts which ought to have influenced their conduct, and which acts bind them -at law. I know of no principle of a court of equity, which can justify such relief. A contrary decision can only be made upon principles which will lead to the consequence, that in all cases in which an executor can shew in a court of equity, that he has not assets to pay the debt recovered at law, in a due course of administration, he is entitled to relief, notwithstanding his acquiescence without defence, in the original judgment at law, and in a judgment establishing a devastavit, and a judgment upon the official bond of the executor; and thus frustrate the policy of the act, which authorises a suit upon the executor’s official bond, next after obtaining the original judgment against the estate, without resorting, as was before necessary, to an action, to establish a devastavit, which was obviously intended to expedito the remedies of the creditors.
I think the order dissolving the injunction is right, and ought to be affirmed.
Judge Coalter, delivered the following opinion, in which judge Brooke concurred:*
I am of opinion, that under the circumstances of this case, as set forth in the bill, (and in which 1 think I am supported by the case of Pickett vs. Stuart,(b) and other cases in this court,) the appellants ought not to be made answerable out of their own estates, in default of assets of their testator, for the debts sought to be injoined, by reason of the proceedings at law. The confession of judgment, under the circumstances, ought not, I think, under the equity of the statute, to place the party in a worse situation than a false plea. The giving delivery bonds, Was necessary to prevent the assets from being taken to *448 pay those debts ; and, therefore, they had no opportunity to make a defence at law, except in the first suit, and con* sequently, had no remedy but in equity. I, therefore, think, that the injunction ought not to have been dissolved, until an account had been taken of the legal assets of their testator, which came to their hands, and of the debts of superior dignity to those sought tobe injoined, and of which the appellants had such notice as would have given them priority to the judgments in the bill mentioned ; and also, an account of such debts of equal dignity, which the appellants, in a due and legal course of administration, had a right to pay off and discharge, and over which the appellees had obtained no legal priority, at the time of such payment.
The decree must, therefore, be reversed, with costs, the injunction re-instated, and the cause remanded to have an account taken, according to the above principles, and proceeded in to a final decree.
The following was entered as the decree of the court:
The court is of opinion, that the injunction in this case ought not to have been dissolved, until an account had been taken of the legal assets of the testator which came to the hands of the appellants, and of the debts of superior dignity to those sought to be injoined, and of which they had such notice as would have given those debts priority to the judgments in the bill mentioned; and also, an account of such debts of equal dignity, which the appellants, in a due and legal course of administration, had a right to pay off and discharge, and over which the appellees had obtained no legal priority, at the time of such payment.
The decree is, therefore, reversed, with costs, the injunction re-instated, and the cause remanded to have an account taken according to the above principles, and to be proceeded in to a final decree.

 Ante,p. 421.

 Judge Cabell did not sit in tins cause.

 See Appendix, No, 2.