## Titus Howard, Administrator, *v.* Cousins.

As to what was a proper judgment on a question of law certified to the late supreme court.

A judgment described in the declaration as of the December term, 1830, is not answered by proof of one rendered of the December term, 1831.

Under the statute of this state, judgment against an administrator, and proof that assets came to his hands, are only *prima facie* evidence to charge the administrator, which he may rebut by showing, that he has no assets in his hands unadministered, although he has not reported the estate insolvent.

The common law rule in relation to the presumption of assets does not obtain in this state to its fullest extent, against administrators and executors.

Proceedings against an administrator individually, will authorize a judgment against him in his representative character.

IN ERROR from the circuit court of the county of Lowndes.

This was an action of debt commenced in the circuit court of Lowndes county, in the year 1831, by W. H. Cousins against Howard, upon a judgment rendered against Howard, as administrator of S. Alfriend, in the supreme court, suggesting a *devastavit.* Howard pleaded nine pleas. 1. *nul tiel* record; 2. *nil debit*; 3. not guilty; 4. *non devastavit;* 5. *plene administravit;* 6. *plene administravit*, except fifteen dollars and seventy-three cents; 7. special *non devastavit;* 8. jury did not find assets; 9. jury did not find amount of assets. Plaintiff replied to 1st, 2d, 3d, and 4th pleas, and demurred to remainder. The court sustained the demurrer. The case was put to a jury, and plaintiff took a nonsuit. Nonsuit set aside, and leave given plaintiff to amend. Plea of *nul tiel* record sustained, and leave given to amend. Defendant plead *nul tiel* record; *nil debit;* not guilty; *plene administravit; plene administravit*, except fifteen dollars and seventy-three cents; a settlement with probate court.

The case came on for trial, and defendant asked the court to instruct as in case of nonsuit; which was done. Exceptions

Titus Howard, Administrator, *v.* Cousins.

taken. Prior to this, the court ordered the 5th, 6th, and 7th pleas to amended declaration to be stricken out. The jury found for defendant; cause taken to high court; judgment reversed, and *venire facias de novo* awarded. At the October term, 1838, the issue of *nul tiel* record came on for trial, and the court found the issue in favor of plaintiff; to which a bill of exceptions was taken, setting out the record. That record exhibited showed a suit in favor of Cousins, against Howard, administrator, &c., in the circuit court of Lowndes county; a trial and verdict in favor of Cousins; a respite of judgment, and reference of the case on doubts to the supreme court. The supreme court decided in favor of plaintiff, and rendered judgment against defendant, which was certified to circuit court. No judgment was rendered in the circuit court on the finding of the jury. No judgment was rendered in the supreme court at the December term, 1830, when the doubts were decided. But at the December term, 1831, it was entered *nunc pro tunc.* A second bill of exceptions was taken to the action of the court, in permitting the certificate of the judgment entered in the High Court at the December term, 1831, to be read on the plea of *nul tiel* record. On the trial before the jury, the plaintiff offered to read the above record in the suit of Cousins against Howard, administrator, &c. together with the *fieri facias* returned *nulla bona,* in evidence to the jury; the defendant objected, but the record was read, to which defendant excepted.

The defendant offered to read in evidence the record and proceedings in the probate court, in the matter of the administration of Alfriend's estate, which the court, on objection by plaintiff, refused to permit him to do; which was excepted to. The defendant was then permitted to read so much of the proceedings in the probate court as showed the reception of assets by him; but the remainder of the record showing their application the court would not permit him to read, which was excepted to.

The defendant also offered to prove by witnesses that he had paid out on claims against the estate of Alfriend, before the commencement of this suit, or of the original suit against him as administrator, &c. all the assets, except fifteen dollars and seventy-three cents, that had ever come into his hands; but this the court overruled.

The court charged the jury, that the previous finding of the jury and judgment of the court, with the return of *nulla bona* by the sheriff on the execution is conclusive evidence of the defendant's liability as administrator; and his failing to report the estate insolvent is *prima facie* evidence of assets to the amount of the just claims against the estate; and that the law presumes the defendant has assets to pay the just claims against it, until he reports it insolvent. These charges were excepted to.

W. YERGER for plaintiff in error.

The court erred in overruling the defendant's pleas of *plene administravit*. It is true, by the strict common law rule, the judgment against an administrator, and execution and return of *nulla bona*, are evidence of a *devastavit*, and pleas which are intended to disprove it, by denying assets, are not received. 2 Williams on Ex'rs, 1225. A different rule, however, must necessarily prevail in this state, or the statutory provision in favor of executors and their sureties cannot have any effect. Rev. Code 44, sec. 57. That section is in these words: "No executor or administrator, &c. shall be chargeable beyond the assets, by reason of any omission or mistake of pleading or false pleading of such executor or administrator." The meaning of this statute clearly is, that in no case, before or after judgment, shall an executor be held liable out of his own goods, beyond what he may actually have wasted of assets belonging to the testator. It was intended, in reality, as a repeal of the law creating a technical estoppel against executors whenever a general verdict and judgment was rendered against them. 2. How. 617.

The court erred in deciding the plea of *nul tiel record* for the plaintiff. The plaintiff alleged a judgment of the supreme court at the December term, 1830. Upon production, it appeared that no judgment was in fact rendered at that term, but that it was rendered at the December term, 1831, of the supreme court. Here was a clear and palpable variance between the allegation and the proof. In this case the action is upon the judgment, and the date of it is a matter of description, like the date of a promissory note, and the rule is well settled, that allegations of matter of description must be literally proved. 3 Barn. & Cress. 4. Even if it

were conceded that the date of the judgment were matter of substance, requiring only to be substantially proved, yet in an action upon judgment, especially against an executor, it is not a substantial proof of a judgment alleged to have been made in 1830, to produce one made in 1831; because the rights and liabilities of the parties are greatly changed by the lapse of time.

It is said, however, that the judgment in 1831 was *nunc pro tunc* for that of 1830. This is admitted, but still it is no judgment of 1830; and the rights of the administrator under one is greatly different from that under the other. 6 Tenn. R. 11.

But the court should have sustained the plea of *nul tiel record,* because the record offered was not the record of the judgment in the supreme court. It was a record of the proceedings in the circuit court of Monroe county, with a certificate from the clerk of the supreme court, of a judgment there. In an action on a judgment, nothing but the whole record is admissible. 1 Yerger, 261; 1 Starkie, 163.

In the case of Hoy *et al. v.* Couch, 5 How. R. 192, this rule is admitted by the court, who there say that the certificate of reversal was evidence, because it was "not introduced to prove a judgment, but the reverse. The rule in reference to the introduction of records does not apply," &c. From which it is manifest, that this court understood the law to be, that in an action on a judgment of this court, the whole record must be produced. For what constitutes a record of this court, see opinion of court in Fox *v.* Fisk, 6 Howard, 328.

But the plea of *nul tiel record* should have been sustained upon another ground. The pretended judgment of the supreme court was void for want of jurisdiction. The act of 1822, Rev. Code, 138, authorized the circuit courts, "when a question, new and difficult, arises, on which the judge may doubt as to the rule of decision, to adjourn such question or matter of law to the next supreme court." The supreme court was authorized by the 21st section of the supreme court law, Rev. Code, 154, "to hear and determine such adjourned question, and to certify such determination on the same to the court whence the question was adjourned."

The record offered in evidence showed a verdict of jury in favor of Cousins *v.* Howard, administrator, &c.; and that the circuit

court doubted as to what judgment it should render; and that question was adjourned to the supreme court. What power had the supreme court? . Clearly none other than to settle the point of law about which the doubt arose, which, when settled, it was to certify to the circuit court, and the circuit court then took the proper action or entered the proper judgment. The supreme court had no authority to render any judgment in the cause; it could only settle the legal question referred to it. Inasmuch, then, as it had no power to render the judgment, its action therein is *coram non judice* and void. Either of these grounds are sufficient to sustain the plea of *nul tiel record.*

When the case was presented to the jury, the court erred in permitting the plaintiff's record to be read, for the reasons given above.

The court erred in refusing to let the defendant prove by the Orphans' Court record, and by the witnesses offered, that he had no assets at the rendition of the original judgment. As I have heretofore attempted to show, our statute has repealed the common law rule, that a judgment against an administrator estopped him to deny assets, and leaves the judgment, as in justice it ought to be, only *prima facie* evidence of liability; and being only *prima facie,* he should have been permitted, by proof, to rebut the presumption.

The charges of the circuit court are equally erroneous.

The first charge applied the ancient common law doctrine of estoppel to this case. As before shown, our statute has repealed that rule, and makes a judgment only *prima facie* evidence of assets.

The second charge is, if any thing, still more erroneous. It would be intolerably oppressive to hold an administrator *prima facie* liable for assets, until he reported the estate insolvent. For it may be, the service of the writ in a suit would be the first notice he would have of debts more than the assets in his hands. The law presumes every man will do his duty; and if a failure to report an estate insolvent raises any presumption, it is simply a presumption that the administrator has not yet had sufficient evidence to induce him to believe the estate insolvent.

The third charge, that the law presumes an administrator has

Titus Howard, Administrator, *v.* Cousins.

assets to pay all just claims against an estate until he reports it insolvent, is surely not law. As before said, the law presumes that every officer, administrator as well as others, will do his duty. If, then, it will raise any presumption from his failure to report an estate insolvent, that presumption would be, that he had not sufficient evidence of claims against the estate to induce him to believe its assets insufficient to pay its debts.

HOWARD on the same side.

COCKE for defendant in error.

It will be seen that in this case it was. the great object of the plaintiff in error to get to a period before the commencement of this suit, and also the one upon the record and recovery of which this suit is founded; to say that before the claim of the defendant in error was presented, he had made settlement and distribution of the assets of the deceased. Whether this were so or not, it could in no manner interpose itself into this litigation. If the claim of the defendant in error against the estate was a valid one, presented in due time, not barred by the statute of limitations or other valid objection, it is difficult, under our laws, to perceive the principle upon which an administrator should expect to hinder its satisfaction out of the effects of the deceased. The record shows the claim to have been for money paid by the defendant in error, as surety for the intestate. Its justness has been fully established by the verdict of a jury and the judgment of the court in the action against the administrator, as such, for that purpose. But in the action against the plaintiff in error, for wasting the assets of the deceased, and for the *devastavit* complained of, the plaintiff in error in the court below sought to set up certain supposed technical irregularities in obtaining the judgment against him as administrator. It is believed that no irregularities or insufficiences intervened in such action ; but if there were any such, it is submitted whether they can be inquired into otherwise than by a proceeding on error in that action for the purpose.

It is, however, contended by the plaintiff in error, that the decision of the late supreme court, on the reference made of the doubts of the rule of decision by the circuit judge, as contained

in the record, was *coram non judice*, and a nullity. The statute law upon this subject may be found in the Revised Code, page 138, sec. 148. It is believed that that section may be fairly read thus: "The said circuit courts, when a question new or difficult arises on which the judge may doubt the rule of decision, may adjourn such question or matter of law to the next supreme court, for the consideration and decision of the supreme court at their next succeeding term." It will thus be seen that the legislature authorized the judges of the circuit courts to adjourn questions of law to the determination of the old supreme court. It was the constant practice of the late supreme court to take cognizance of causes in that form, and to give judgment in them. Many of the cases reported in Walker's Reports will be found to be of this description. And in the case of Carriway *v.* the Board of Police of Yazoo county, 1 Howard, 21, the present High Court of Errors and Appeals doubts its own jurisdiction over adjourned cases, but fully sustains the jurisdiction of the late supreme court. In that case this court says, In such case the doubt of the judge gave jurisdiction.

It is further contended by the plaintiff in error, that the court below could not proceed on the certificate of the clerk of the supreme court of the judgment of that court, but that it was necessary to have a full and complete transcript of the entire record from the supreme court.

At page 150 of the Revised Code, sec. 8, the duty was required of the clerk of the supreme court, when a final judgment was rendered in that court, to certify such final judgment to the court from whence the case was removed into the supreme court; and that the clerk of the court from whence such cause was so removed, on receiving such certificate, to issue execution on such final judgment. It was not only the requirements of the law, but the uniform practice of all the courts, thus to carry into effect the judgments of the supreme court. In fact, the record in the court below, and the certificate of the clerk of the proceedings in the appellate court, make the record full and complete in the inferior courts. This doctrine is sustained in the case of Hoy *v.* Couch, 5 Howard, 188, and these views cover all the grounds of objec-

tions as to the admissibility of the record on the plea of *nul tiel record*, and as evidence to the jury.

The defendant in error, in support of the declaration and to establish the *devastavit* charged, read in evidence to the jury:

1. The said judgment of recovery against the plaintiff in error in the late supreme court, against him as administrator, to be levied on the goods and chattels of the said intestate in his hands to be administered.

2. The certificate of the clerk of the supreme court certifying the said judgment into the circuit court.

3. The *fieri facias* issued by the clerk of the circuit court on the said judgment.

4. The return of the sheriff on the execution, and that "the within named Titus Howard hath no goods or chattels of the said Shadrach Alfriend, deceased, to be administered within my county, whereof I can make the within mentioned sum of money, or any part thereof. 9th May, 1831.　　　　　.N. DAVIS, Sheriff."

The defendant in error also proved by the said sheriff that whilst said execution was in his hands, as sheriff, he applied to the said administrator for the effects and property of the intestate, upon which to levy the said execution, and that the said administrator replied that there were no effects or property of the deceased in his hands to be administered; and that the effects of said deceased had been fully administered and settled by said administrator. This closed the evidence on the part of the defendant in error in the court below.

The plaintiff in error offered to read in evidence to the jury in the court below the record of the administration of the estate of the deceased, which took place in the probate court prior to the commencement of the suit, on the record and recovery of which this suit is founded. This was objected to, and the objection sustained, because its object and effect would be to discharge this recovery by matters prior to the judgment; and in fact all and every claim on the assets of the estate, and though valid and just, it could have no right of satisfaction out of the estate. It was on the principle that, under our laws an administrator has no right to retain to himself the assets of the estate, or pay them all over to any one favorite claimant, to the prejudice of other valid claim-

ants.   The court below took the ground (which will hereafter be seen) that if the estate be insufficient to pay all demands on it, it is the duty of the administrator to report the estate insolvent, that a *pro rata* division may take place.   It was on this principle that so soon as it was discovered that the plaintiff in error was reading the record of his administration to effect this object, objection was made to his reading the proceedings in administration any farther. The objection was sustained on that ground, and the reading of the proceedings in the probate court further prevented.   It was the principle on which the demurrer was sustained to the fifth, sixth, seventh, eighth and ninth pleas.  It was also the same which caused the court below to refuse permission to the plaintiff in error to prove by witnesses, that before the commencement of this suit, or the suit upon the record and recovery of which this suit is founded, he had paid out on claims against the intestate the entire amount of assets which had come to his hands to be administered, except fifteen dollars and seventy-three cents, and as to the fifteen dollars and seventy-three cents, the same had been deposited in the probate court.

Indeed, we believe that the whole of this controversy is confined to the propriety or impropriety of the charge of the court below to the jury, as asked by the counsel for the defendant in error, as contained in the eighth bill of exceptions.   They are, first, that the previous finding of the jury and judgment of the court, with the return of *nulla bona* by the sheriff on the execution, is conclusive evidence of the defendant's liability as administrator. Second.  That his failure to report the estate insolvent is *prima facie* evidence of assets to the amount of the just claims against the estate.   Third.  That the estate must be either solvent or insolvent, and that the law presumes that the administrator has assets to pay the just claims against the estate, until the administrator reports the estate insolvent.   As to the first charge asked, that the judgment and proceedings in the original suit was conclusive evidence that the administrator, as such administrator was liable, it was no more than to say that on obtaining a judgment against an administrator as such, the party had right to have satisfaction of his judgment out of the goods and chattels of the intestate in the hands of the administrator to be administered.   We might have

perhaps well asked a charge to the jury that those things were conclusive evidence of the liability of Howard *de bonis propriis.* By the English practice, and perhaps in most of the states, they are conclusive of the liability of the administrator to answer out of his own goods. 1 Saund. Rep. 219, n. 8, and the authorities there stated. Such also appears to have been the views of this court as to what would fix the personal liability of an administrator as for a *devastavit* in this state. Sims *v.* Nash, 1 How. 271. But we think we cannot be mistaken in the position that under the circumstances of this case the personal liability of the plaintiff in error was well fixed.

We are aware that in this state an administrator is not liable personally for mispleading, false pleading, or omitting to plead as administrator. But he is liable for misapplying or wasting the assets of the estate. The presumption in law is in favor of solvency. If it were true in fact that the estate was insolvent for an amount never so small, so soon as the recovery was had against the administrator as such, he had the very best notice of the existence of this valid claim against the estate. If in fact he had not assets in his hands sufficient to satisfy it, it was his duty to all the creditors, to this creditor, to the law, and to himself, to report to the proper probate court the estate insufficient to pay the debts. How. & Hutch. 407, sec. 76; 409, sec. 80.

By doing this, these proceedings could at any time have been arrested by him; a *pro rata* division taken place between all the creditors before the probate court, and justice done to all concerned. But this he fails and refuses to do. We are therefore driven to the conclusion, as the law presumes from the position he has been pleased to take, that he has assets sufficient to pay all just claims against the estate. The second portion of the charge given by the court below, that his failure to report the estate insolvent is *prima facie* evidence of assets to the amount of just claims against the estate, was well given. It is of itself evidence sufficient to support the *devastavit* found by the jury, for no administrator can lawfully be permitted to waste or appropriate to his own use the assets of an estate by failing or refusing to discharge a known duty. The last charge to the jury, that the estate must be either solvent or insolvent, and that the law presumes that the

administrator has assets to pay the just claims against the estate until the administrator reports the estate insolvent, cannot be erroneous. It is in fact a self-evident proposition, and necessarily grows out of the duty of the administrator to report to the probate court insolvency, so soon as he shall discover or believe the estate to be insufficient to pay the debts. Failing and refusing so to report this estate, it follows that the evidence given in this cause well supports the *devastavit* found.

Mr. Justice CLAYTON delivered the opinion of the court.

This is an action of debt, brought by the appellee against the plaintiff in error, who was administrator of S. Alfriend, deceased, upon a judgment rendered against Howard in the late supreme court, suggesting a devastavit. The facts in the record are very voluminous, and present several questions for consideration. Only the more prominent will be noticed, as they dispose of the case.

The defendant below objected to the reading of the original judgment against him, for two reasons:

First. That the judgment itself is void, because of irregularity in the mode in which it was rendered; and,

Second. Because of a variance between the judgment and the description of it given in the declaration.

The court overruled the objections and suffered it to be read, and the points were reserved.

The judgment purports to have been rendered in the supreme court, under the old law of this state, authorizing the judges of the circuit court to adjourn points of difficulty into the supreme court, and requiring the latter to certify its opinion to the court below. Rev. Code, 138, 154.

It is insisted that the judgment of the supreme court in this instance is void, because, instead of certifying its opinion back to the circuit court, it entered up a final judgment. The statute under which this proceeding took place is very similar to the act of congress regulating the practice where the judges of the circuit court are opposed in opinion. The uniform practice of the Supreme Conrt of the United States, upon a certificate of division of opinion between the judges below, is to certify their opinion to the circuit court, and this certificate forms the rule of their action.

Titus Howard, Administrator, *v.* Cousins.

The judgment entered in this case by the supreme court is not in accordance with the law, nor with what we understand to have been the usual practice in that respect; but it would be going very far for us to decide that it is void, and, as there are other grounds on which the judgment will be reversed, we will give no opinion on this point.

The second objection to the reading of the record is well taken. The judgment described in the declaration is of the December term, 1830; that which was read was a judgment of the December term, 1831, rendered *nunc pro tunc*. It would be a fruitless task to gather up and comment upon the many cases which have occurred upon the subject of variance. A large number will be found collected in 2 Phil. Ev. p. 518, note 407. They are apparently fluctuating and discordant, and governed by no uniform and pervading principle. But we think it would be a departure from that certainty which is required in legal proceedings, to permit the judgment offered in this case to be read, under the description contained in the declaration.

We shall notice but one other point, though that bears upon several parts of the case. The defendant was not permitted to prove that he had fully administered the estate of his decedent, and the original judgment against him, with the return of *nulla bona* on the execution, were held to be conclusive evidence of a devastavit by him. This was, no doubt, the rule at common law. But our statute enacts "that no executor or administrator shall be chargeable beyond the assets of the testator or intestate, by reason of any omission or mistake in pleading, or false pleading of such executor or administrator." H. & H. 396, sec. 38. This statute has already received an exposition in this court, which shows the change it has wrought in the common law rule. Vick *v.* House *et al.* 2 How. 617. It is there laid down, that, since the enactment of that statute, "nothing is deemed sufficient to create a presumption of assets."

A similar statute in Virginia has received a like construction in the court of appeals of that state. There it is held, that "the judgment against the administrator is *prima facie* evidence of assets to satisfy it, and the burthen is on the defendant in the sub-

Titus Howard, Administrator, *v.* Cousins.

sequent action, of proving that payment of the judgment would charge him beyond the assets of the testator or intestate." Miller's Ex'or *v.* Rice, 1 Rand. 443. Here the first judgment, according to the case above cited, is not even *prima facie* evidence of assets.

There is error, therefore, in the opinion of the court below upon this point.

We cannot adopt the construction which the counsel for the defendant in error endeavors to put upon the charge of the court upon this head, namely, "that the judgment and return of *nulla bona* were conclusive evidence of the defendant's liability as administrator." There was, in the view of the plaintiff below, already one valid subsisting judgment against the administrator, as such; for what purpose is another sought? Besides, all the proceedings, from the beginning to the end, are against Howard individually, and a judgment in such a case, against him in a representative capacity, would of itself be erroneous.

His failure to report the estate insolvent, and thereby to cause an equal distribution of the assets, may very probably subject him to an action on his bond for not administering the estate according to law; but we do not think that such failure authorizes a recovery in this form.

The judgment is reversed, and cause remanded for a new trial.