Allen, J.
The testator, after making large specific bequests, directed the residue of his estate to be divided into six parts, of which the executor was to have oné, and the remaining five were divided among his children and grandchildren. He owed no debts, and the executor proceeded to make sundry payments to the five legatees. The payments were voluntary; but, as it is alleged, were made under a mistake of fact as to the value of the assets. When the money was paid, all parties supposed that a bond given by Thomas Macon to the testator in his lifetime for a large amount, was good and would be collected; and the executor, in settling with the legatees, acted under that impression. The bond has turned out to be unavailing. Macon, though in the possession of an immense estate at the testator’s death, was in truth greatly embarrassed, and subsequently gave deeds of trust which exhausted all his property. There being no creditors of the tes *666 tator, the executor now seeks to recover bapk for his own benefit the sums overpaid to the legatees.
Ia 1 Roper on Legacies 315. it is said to be a rule in equity, to presume, when an executor voluntarily pays one or more legacies, that he has received sufficient assets to discharge the rest; and although the fact be otherwise, not to admit evidence to that effect. In such cases, therefore, the executor will be under the necessity to make up the deficiency with his own money, since he will not be permitted to institute proceedings (except in particular instances) against the legatees so paid, to oblige them to refund. See also 2 Lomax’s Digest 173. 2 Williams on Ex’ors 892. 1 Eq. Ca. Abr. 239. The cases referred to by Roper, of Noel v. Robinson, 1 Vern. 94. Newman v. Barton, 2 Vern. 205. Coppin v. Coppin, 2 P. Wms. 292. and Orr v. Kaines, 2 Ves. sen. 194. seem to me fully to sustain the position that in England, where the executor has made a voluntary payment, he cannot compel the legatee to refund: though there may be good reason to doubt whether they fully justify the position that such payment is an admission of assets sufficient to pay all the rest of the legatees, and that, though the fact may be otherwise, equity will not admit evidence to that effect. The authority for this proposition is the opinion of sir John Strange, master of the rolls, in 2 Ves. sen. 194. That opinion has been reviewed by president Tucker in Gallego's ex'ors v. Attorney General, 3 Leigh 488. and he there shews, that sir John Strange merely says such payment furnishes a presumption of the sufficiency of assets to pay the rest of the legacies, but does not say the presumption is conclusive. In the opinion of president Tucker, such presumptions, like all others, are liable to be rebutted, and although an executor may have been willing to encounter the hazard of paying one, it furnishes no reason for being compelled to pay the rest out of his own pocket.
*667 I should not consider such a payment to one as conclusively establishing the executor’s liability to all the rest, although the assets were deficient originally; cause that would conflict with the spirit of our laws and adjudications. In England, the executor is personally bound if he fails to plead. A judgment against him on any plea except plene adminislravit, or a plea admitting assets to a sum certain and riens ultra, is conclusive on him that he has assets to satisfy such judgment. Our statute (1 R. C. p. 384. ch. 104. §36.) has altered the law in this respect, and a failure to plead, or mispleading, subjects him to no personal responsibility. To hold that a voluntary payment to one legatee is an implied admission of assets sufficient to pay all, would be giving to such implied admission in pais an effect to which the statute has declared an admission on record shall not be entitled. For, by any other than the plea of plane adminislravit, he was held to admit assets. 1 Wms. Saund. 335. note 10.
But as between the executor and the legatee who has. been paid, the cases are decisive that he shall not recover back the payment if voluntarily made. And no case has been cited which shews that such a bill has ever been sustained in England. It is certainly not shewn by those cited from 1 P. Wms. 495. and 2 P. Wms. 447. In Virginia the question has never arisen. Burnley v. Lambert, 1 Wash. 308. was a suit by the legatee to recover slaves bequeathed to him, and which had been seized and sold on an execution against the executor after he had assented to the legacy. Judge Pendleton, after deciding that the assent of the executor to the legacy vested the legal title in the legatee, which could not be divested at law by the creditor, remarks that the creditor is not without remedy ; he may follow the assets in the hands of the legatee, or proceed against the executors, in which case the executors have their remedy in equity to compel *668 the legatee to refund. It does not appear from the report, whether the debt was one of which the executor had no previous notice ; and it was unnecessary for the court to enquire into that matter. If it was a debt of which he had no notice before paying away the assets to legatees, he had a right to compel the legatees to refund. Nelthrop v. Biscoe, 1 Ch. Cas. 135.* And as the assets are always bound to the creditor, and he may pursue them in the hands of the legatee even though the testator’s effects would have been sufficient to pay both debts and legacies, (1 Yern. 162.) there might be good reason for holding that where the executor paid a legacy with notice of a debt, believing the assets to be sufficient, and they proved insufficient to pay both, he should be permitted to compel the legatee to refund. The legatee takes subject to the liability of being compelled to refund at the suit of a creditor. And where the executor has not been culpable, and is compelled to pay the debt, it seems to me he should be substituted to the rights of the creditor he has paid. So far the strict rule of the english courts might properly be relaxed in conformity with the more liberal spirit of our legislation in regard to executors, and with the principles which led the court to give relief in Miller's ex'ors v. Rice &c. 1 Rand. 438.
Jones v. Williams, 2 Call 102. was a controversy about accounts, and the question could not have arisen ; for the money advanced to the distributee was advanced as a loan, to be returned if on a settlement he was not entitled to it; and for that reason the executor was allowed interest on the sum decreed to him.
*669 Bowers's ex'or v. Glendening &c. 4 Munf. 219. decides • i merely that an executor against whom a creditor obtains a decree may compel the legatee to refund.
In Gallego's ex'ors v. Attorney General, 3 Leigh 450. it was decided that where the estate proved deficient by an unexpected depreciation of the property after some of the legatees were fully paid, the unpaid legatees have a right to look to the executors for their ratable proportions of the fund, and are not bound to have recourse to the legatees who were fully paid to compel them to refund. In England, the unsatisfied legatee cannot maintain a suit against the legatee fully paid to compel him to refund, if the executor is solvent. Such judge Tucker lays down to be the rule; and therefore, though he was of opinion in Gallego's ex'ors v. Attorney General that the executors were liable only for the ratable proportion of the legacy, and not for the whole, upon the ground that payment in full to one was an admission of assets sufficient to pay all, he still held, that as the executors were quite solvent, the legatees had no right to call upon those paid to refund. The case did not call for a decision on this point, and the other judges did not notice it. If, as I conceive, the executor who has been made liable at the suit of the creditor can only be permitted to compel the legatee, whom he has voluntarily paid, to refund, by substituting him to the rights of the creditor, who could have proceeded in the first instance against the assets ; where it is shewn that no such original right to charge the assets exists, there is no right to which the executor can be substituted.
But even if, in a case where there was an original deficiency of assets, (as in Gallego's ex'ors v. Attorney General) it should be held that the executor, having through mistake paid one legatee in full, and having afterwards been compelled to pay the proportions of the others out of his own pocket, might compel the *670 legatee overpaid to refund ; the case would still fall short of that under consideration. Here the executor has not been called upon by a creditor to make good assets improperly paid away, or by an unpaid legatee to pay him a ratable proportion of his legacy out of his own pocket: he is seeking to recover for his own benefit alone. To sustain his claim to such a recovery would be against the whole series of authorities in England, commencing at an early period, and without the support of a single authority or dictum in our own courts.
It is the duty of the executor to make himself acquainted with the condition of the estate. The means are in his own hands, and if he neglects to avail himself of them it is his own fault. He is not compelled to pay the legatees until the debts are discharged, and until he has ascertained the precise extent of the assets. He can decline paying except under the decree of a court, and then he is entitled to call upon the legatee to refund if the estate was originally deficient; and he may with us always require a refunding bond. If, without using any of these precautions, he voluntarily pays the legatee, the latter has a right to consider the money as his own ; subject, it is true, to be called upon to refund at the suit of creditors, or of an unpaid legatee if the assets were originally deficient. But these are contingencies too remote in his apprehension, when a payment has been made to him under such circumstances, to have any influence on his conduct. The hardship of the case is greater upon the legatee than the executor. He has been in no default. No duty was imposed upon him to examine into the state and condition of the assets. He receives what a payment under such circumstances has impressed him with a conviction he will never be called upon to refund. Such unexpected additions to men’s fortunes are frequently spent without much consideration ; wasted in the gratification of some want to which the *671 legacy has given birth, or released to some more needy relative. It would be the grossest injustice, under such circumstances, to permit the executor, who had thus misled him by his negligence or inattention to his duties, to compel him at some distant day to refund the money. The case of a legatee, and as between him and the executor, seems to me much stronger than the cases of Brisbane v. Dacres, 5 Taunt. 144. 1 Eng. C. L. Rep. 43. and Skyring v. Greenwood, 4 Barn. & Cress. 281. 10 Eng. C. L. Rep. 335. in the first of which cases Gibbs, J. remarked, that he who receives money so paid “ has a right to consider it as his without dispute : he spends it in confidence that it is his'; and it would be most mischievous and unjust, if he who has acquiesced in the right by such voluntary payment, should be at liberty, at any time within the statute of limitations, to rip up the matter and recover back the money.”
The only modifications of the general rulé which our laws seem to call for, are those already indicated. A payment to one in full shall not be construed into an admission of assets sufficient to pay all: it merely furnishes a strong presumption, which may be rebutted by proof of an original deficiency. And in all cases where the executor is compelled to pay a creditor, he shall, upon the principle of substitution, have the right to compel the legatee to refund, and this although he had notice of the debt at the time of payment; unless he has been guilty of culpable neglect of his duty to inform himself of the condition of the estate. But where he has not been subjected to liability at the suit of a creditor, he shall not be permitted to recover back, for his own benefit, what he has voluntarily paid to the legatee.
On the particular circumstances attending this payment, the case, it seems to me, is still stronger against the executor. The testator died in March 1816. The *672 will was proved in a short time thereafter, and the executor qualified in October following: but he took possession of the estate, and acted as executor, immediately after the death of the testator, managing the estate according to the directions of the will. In November 1816, the executor filed the bill in the present cause. The object contemplated in filing it was clearly nothing more than a division of the slaves. I should not consider this as affecting the validity of the settlement and decree, if free from other objections. The bill made the will an exhibit; there was a prayer for general relief ; the answers consented to a division of whatever property was by the will directed to be divided ; and all parties at a subsequent period proceeded to the account, without any exception or objection to the propriety of such settlement under the pleadings in the cause. After this, it seems to me to be too late to start the objection here. On the coming in of the answers, commissioners were appointed to divide the slaves, who made the division in January 1817. This being done, no farther proceedings were had in the cause until August 1825, when it was ordered (on whose motion does not appear) that the report of the division should be confirmed, and that the commissioners should settle the executorial account. In the meantime, and as early as September 1817, an informal statement and settlement of the accounts was made at the instance of the executor. At this time the executor had fully informed himself of the condition of the estate. There were no debts to pay; nothing to do but to ascertain the amount and pay the legatees their proportions. Charging the bond due from Macon to the testator as part of the available assets, these proportions were ascertained, and the executor proceeded to make payments. That the condition of the estate was fully known to the executor at that time, is manifest from a comparison of the statement made in 1817, with the *673 settlement returned in the cause under the order of 1825. The items correspond throughout; and the only difference between them arises out of the Macon bond, which was not estimated as part of the assets at the last settlement. Excluding this bond, the executor had overpaid ; and this overpayment he seeks to recover back, because the bond was estimated as part of the available assets under a mistaken impression that Macon was perfectly solvent; an opinion entertained as well by the legatees as the executor. Conceding this to be the fact, how does it benefit the executor ? He had control of the bond, and it was his duty to satisfy himself of the solvency of the obligor. The legatees were passive. They made no misrepresentation. It does not appear that they were even urgent for the payment of their legacies. The estate being entirely free from debt, it was the duty of the executor (and his interest too, he being entitled to much the largest portion) to settle up and pay the legatees in the course of the year. This bond constituted a large portion of the assets. He could not have been charged with it until he had collected it. If he did not intend to risk the solvency of the obligor, he should have instituted suit upon it, or-at least excluded it from the statement on the faith of which the legatees received the payments. Under these circumstances, and after having held it up for eighteen months from the probat' of the will, and then brought it into the account, his conduct was tantamount to a representation to the legatees that the bond was good, and that he as executor was willing to take it. The defendants insist in their answers that there was an express agreement to that effect; and the evidence, if it does not establish it, tends to prove it. But the transaction speaks for itself. He charged himself with the bond ; and the legatees, on the faith of this act, voluntary on his part, and after full time to satisfy himself of the solvency of the *674 obligor, received what he thus induced them to believe was their own. Supposing he made an innocent mistake, does that give him a right, not only to discharge himself, but to charge others who were misled by him ?
Though I should not consider him guilty of such laches in failing to collect the bond as to render him responsible for its whole amount, yet the question assumes a very different aspect when he seeks to recover back, for his own benefit, what he has paid on account of 'it. The obligor, at the death of the testator, and when the executor qualified, was in possession of a very large estate; his embarrassments were unknown in the neighbourhood. Who can say, that if the executor had proceeded promptly to enforce payment, the bond would not have been secured or paid ? In December 1817 the deed of trust from Macon was recorded, having been executed by him in June previous. But at what time the debts were all contracted does not distinctly appear. Some of them may have been, and probably were, incurred after the death of the testator and the qualification of the executor. It clearly appears that he was solicitous to maintain his credit. The debt due the testator was-but a trifle in comparison with the immense estate in his possession and to all appearance unincumbered. If the executor had insisted on payment within the year when he was bound to settle up, can any one undertake to say that the debt would not have been paid or -secured ? All that the record shews him to have done was to make an application to the debtor. In the exercise of a proper discretion, the executor may abstain from calling in debts well secured. Where, from the condition of the estate, it cannot be distributed or paid out in consequence of controverted claims, much latitude of discretion maybe allowed; and if without any culpable default of the executor, loss should result from the in *675 solvency of debtors supposed to be good, the circumstances may exempt him from liability. Here the general impression of the solvency of the debtor may be a sufficient defence against the charge of culpable negligence, and relieve the executor from the payment of the whole amount, but does not, as it seems to me, furnish any claim to recover back what he has paid.
It has been contended that this was a compulsory payment, in which case the executor may recover back. Newman v. Barton, 2 Vern. 205. There is nothing in the record to justify this position. There was a suit instituted by himself, in which, for the reasons already given, it was competent to go on and settle the estate. But he paid before any settlement was made in that suit, when in fact no settlement was contemplated, and upon a statement voluntarily furnished by himself.
Upon the whole, without considering the effect of the statute of limitations on the claim of the executor, (though the great delay furnishes another strong circumstance against this pretension) it seems to me that both the rules of law and the particular circumstances of this case should preclude his recovery.
Brooke and Baldwin, J. concurring, decree reversed.

 Note by the reporter. In the late case of March v. Russell, 3 Mylne & Craig 31. 14 Cond. Eng. Ch. Rep. p. 40. the point was made, “that assets cannot be followed in the hands of legatees to whom they have been handed over by the personal representative in ignorance of the demands of creditors which existed at the timebut lord Cottenham said, the proposition could not be maintained; it was contrary to the established rule of the court from the earliest period.