Daniel, J.
I am of opinion that the judgment upon which this suit is founded is barred by the statute of limitations, 1 Rev. Code, ch. 128, § 5. I do not think there is any thing in the character of the judgment which made it incompetent for the plaintiffs to sue forth an execution upon it at any time within one 3mar after it was obtained. I regard the last clause or member of the judgment, as the result of an understanding or agreement between Wood’s ex’ors and West, the sole object of which was, in my opinion, to protect the latter from any risk of a devastavit which he might incur by confessing the judgment. By the common law, a judgment against the executor, de bonis testatoris, whether obtained by default or rendered upon confession, was, upon the trial of an action against the executor for devastavit, conclusive evidence of a snfHcienc3r of assets at the date of the judgment. To relieve the executor from some of the hardships growing out of this rule, the act of 1807 was passed. 1 Rev. Code, p. 384, ch. 104, § 36. It declares that no. executor or administrator, or security for an executor or administrator, shall be chargeable beyond the assets of the testator or intestate, by reason of any omission or mistake in pleading or false pleading of such executor or administrator. The judgment in this case was confessed in 1811, long before there had been, (if indeed there has yet been,) any authoritative decision upon the question whether an executor or administrator could claim the protection of the act, in a suit at law for a devastavit founded upon a judgment which he had confessed. It is true that this Court in the case of Miller’s ex’ors v. Rice & others, 1 Rand. 438, decided that where an executor confesses judgments and gives forthcoming' bonds for debts due *31 by his testator, under the belief that the assets of the estate are sufficient to satisfy all demands against it, but afterwards by an unexpected depreciation of property, the amount of assets proves inadequate, the executor shall be relieved in equity. This was the decision, however, of only two of the Judges of a Court consisting of three; the third, Judge Green, dissenting, and expressing it as his opinion that the executor was concluded by the confession of judgment both in equity and at law. This decision was made in 1823, and the judgment in favour of Wood’s ex’ors, as before stated, was confessed by West in 1811. How far our Courts would be influenced now by the decision above mentioned, or by the liberal policy observed in the subsequent legislation of the State in respect to executors, administrators and their securities, in interpreting the act of 1807, it is needless to conjecture. For be this as it may, it will be readily conceded that it would have been highly imprudent in an executor, at the period when the judgment in question was rendered, (if it would not be so now,) to confess judgments without stipulating that he should not be concluded by the judgments, from shewing, in any future suits founded upon them, the true state of the assets; unless he had satisfied himself from a previous examination of the condition of the estate, that the payment of such judgments could not involve him in the hazard of a devastavit. Accordingly we shall find that it has not been unusual for the representatives of estates, when sued upon debts of their testators or intestates, in cases where the state of the assets have not been fully ascertained, to confess judgments with the understanding that the judgments shall be accompanied by an agreement of record to the effect that they are in no event to charge the representative beyond the assets. Such were the terms upon which some of the judgments, the subjects of controversy, in the case of Miller’s ex’ors v. Rice, were ob *32 tained; and in Robinson’s Forms we have forms for the entry of such judgments and the agreements.* How far the rights of the parties are affected, or the capacian(j properties of the judgments are modified by Sllc^ agreements has not been decided so far as I am in- ° formed; but looking to the object, in the contemplation of the parties, to wit: to prevent the executor from being charged in consequence of the judgments, beyond the assets, it seems to me that the judgments ought still to be treated as absolute judgments do bonis testatoris, having all the attributes of such judgments confessed, and unaccompanied by any agreement; with this exception, that in any suits brought against the executor, founded upon the judgments, they could not be so used by the plaintiffs as to prevent the executor from pleading and proving the true state of the assets. A plaintiff in such a suit, instead of being permitted to rely on his judgment alone as conclusive evidence of a sufficiency of assets in the hands of the executor at the *33 date of its rendition, would be compelled to establish such sufficiency by other proofs. Such agreement, whether placed upon the record apart from the judgment, or incorporated into it as a substantive member or clause, would, I apprehend, in each case receive the same construction. The rights of the parties to the judgment would not be restricted nor enlarged by such agreement further than might be necessary to effect its object, to wit: to save the executor from any personal charge beyond the assets of the estate. In the case before us, Robert West had qualified as administrator some five or six mouths only before he executed the note authorizing the confession of judgment. There is evidence in the record to shew that the estate he represented was considerably involved in debt. It had been in the hands of a previous administrator for some three or four years. What had been the conduct of his predecessor in the management of the assets, what judgments had been rendered against him, or the decedent in Iris lifetime; what, in brief, was the amount of the assets, and of the debts due by the estate of dignity superior to Wood’s claim, West had had but little time to enquire. He was willing that Wood’s ex’ors should have a judgment for their claim, without entering into any controversy, or making any issue as to the state of the assets; but he did not mean by confessing the action to incur the hazard of a devastavit. Hence, by note to his attorney, he authorizes a judgment against him for the amount claimed “ if assets after paying debts of superior dignity.” The plaintiffs agree to accept the judgment upon the terms proposed; and the understanding, instead of assuming the shape of a memorandum entered after the judgment upon the record, is incorporated into and made to form a part of the same entry. The judgment, however, is still, in my opinion, an absolute judgment de bonis testatoris, operative at once, and possessing all the attributes of an unqualified *34 judgment, with the exception before mentioned, that it could not have been used against the executor in any subsequent suit so as to conclude him on the question of a sufficiency of assets. The terms of the entry do not require us to construe the judgment as a judgment quando acciderint, nor do they necessarily imply the necessity of instituting judicial enquiry as to the state of the assets at the date of the judgment, as a prerequisite to the right of the plaintiffs to sue out execution. By this construction of the whole entry, neither party was concluded thereby from shewing in any subsequent controversy, what was the true state of the assets, whether at the date of the judgment confessed, or of the trial of such controversy. The plaintiffs were clothed with the same power to enforce or keep alive the judgment, and the executor with the same means of protecting himself against any dangers arising from the levy of an execution, or otherwise of being charged beyond the assets, that each would severally have had under the provisions of the law of 1807, before recited, in the case of a judgment by default.
So regarding the judgment, I am of opinion that an execution might have been sued out upon it at any time within one year after it was rendered, and that after the expiration of the year it might have been revived at any time within ten years by a scire facias: not by a scire facias suggesting that assets had since come to the hands of the administrator, or that there were at the .date of the judgment assets sufficient to satisfy it after paying debts of superior dignity?-, but by a scire facias to have execution where there has been a failure to sue forth one within the year after judgment rendered. And concurring with Judge Baldwin, as I do, in the opinion, that the bar thus presented by the statute of limitations above cited, is in no wise affected by the provision in the testator’s will for the payment of his debts, I am of opinion that the decree of the Court below ought to be reversed and the bill dismissed.
*35 Baldwin, J. The creditor of a decedent’s estate has a right to establish his demand, by a judgment against the executor or administrator in his representative character, whatever may be the state of the assets, and although there may be none. The judgment usually is, that the plaintiff recover the debt, &c., in question, to be levied of the goods and chattels of the testator or intestate, in the hands of the defendant to be administered. This judgment itself when recovered constitutes a cause of action against the estate, and may be continued or renewed, from time to time, by scire facias, or action of debt thereupon. Whether a suit be brought upon the original cause of action, or upon a judgment, the defendant cannot defeat it by pleading or proving that he has fully administered the assets which have come to his hands. The plaintiff has, notwithstanding, a right, in the original action, to establish the justice of his demand, or in the scire facias or action of debt founded upon the judgment, to establish its continued validity and force, and obtain satisfaction out of any future assets. He may therefore admit the defendant’s plea of fully administered, and take judgment, to be levied of the goods and chattels of the testator or intestate which may thereafter come to the defendant’s hands to be administered. 2 Tidd’s Pract. 1017. And so, though he take issue upon the plea, and it is found against him, he may still have the like judgment quando acciderint. Wishart’s ex’or v. The Commonwealth, 1 Hen. & Munf. 470; Gardner’s adm’r v. Vidal, 6 Rand. 106; Timberlake v. Benson’s adm’r, 2 Virg. Ca. 348. And this judgment quando acciderint may be the foundation of a new action or scire facias, not only against the same, but any future personal representative of the estate ; for example, the executor of an executor defendant, or the administrator de bonis non of the first testator or intestate.
*36 A reason why the plaintiff in a scire facias or action of debt upon a judgment quando accidcrint must state that assets have since come to the hands of the defent>ne SCTye facias must conform to the form of the judgment; but a more substantial reason is, that he has no right to suppress a part of the judgment which may be material to the defence of the defendant. It having been admitted or proved in the former action, that the defendant had fully administered the assets which had then come to his hands, it cannot be incumbent on him to do more than to deny that further assets have since come to his hands, or to aver and prove that he has fully administered such further assets. But his defence that he has fully administered the assets, whether to the original action, or to the new proceeding upon the judgment therein, is not for the protection of his decedent’s estate, but for his own protection. It is no answer to the justice of the plaintiff’s demand against the estate; and although there may be no assets in hand to satisfy it at the time of such defence, it ought to be satisfied out of any assets which may thereafter accrue. There is no reason why the plaintiff may not, in the scire facias or action of debt upon the former judgment, admit the defendant’s plea of fully administered to be true, as well as in the first suit, and take judgment to be satisfied out of future assets, or why he may not have such judgment after a verdict against him upon such plea. No injustice is thereby done to any one. The plaintiff’s demand is thus kept alive, as it ought to be, by establishing the continued validity and force of his former judgment; and the defendant is protected from responsibility in regard to the assets alleged to have accrued since such judgment. And the subject of costs is to be disposed of according to the rules applicable to the original action, which were correctly laid down by the General Court in the case of Timberlake v. Benson’s adm’r, above cited.
*37 The plaintiff in thus proceeding upon his judgment quando acciderint accomplishes one of two objects, both of which are perfectly legitimate. If he can shew that further assets unadministered have come to the defendant’s hands since the former judgment, or rather since the former plea of fully administered, he converts his qualified judgment quando acciderint into an absolute judgment de bonis testatoris, and thereby obtains priority over other creditors in equal degree who have not recovered judgment. If he fails in this, still he revives and keeps alive his former judgment, so as to enable him to subject any assets which may yet accrue after the second judgment.
There is express authority to prove that in a scire facias upon a judgment quando acciderint, where assets arc found as to part, judgment shall be given to recover so much immediately, and the residue of assets in futuro. Perryman v. Westwood, cited in 1 Vent. 95, and Sid. 448; 2 Wms. Ex’ors, 1231; 2 Tidd’s Pract. 1019. I have seen no case where upon such a proceeding and no assets whatever found, judgment has been given for satisfaction out of future assets; and I have seen none to the contrary. But there is no reason for a distinction between a partial and a total failure of assets. If the scire facias ought to be barred or abated as to the whole where it is found there aro no present assets, the same result ought to follow in regard to any part as to which there is the same finding; and if it is proper to take judgment quando acciderint as to part where there are not present assets to satisfy that part, it is equally proper, the like state of things existing, to take such judgment in regard to the whole.
Our statute of limitations, 1 Rev. Code, ch. 128, § 5, p. 489, provides that judgments in any Court of record within this Commonwealth, where execution hath not issued, may be revived by scire facias, or an action of debt brought thereon, within ten years after the date of *38 such judgment, and not after. The terms of the statute it will be seen embrace all judgments, and the period of limitation is from the date of the judgment. There is no reason for any exception, unless the judgment be of su°k a that it cannot be revived by scire facias or action of debt thereupon.
Upon a judgment with a cessat executio, it is true, the statute applies only from the time that the cessat executio terminates; but the reason is that during the cessat the plaintiff can have no scire facias or action of debt to revive the judgment. But this reason I have shewn does not exist in regard to a judgment quando acciderint; for the plaintiff’s right to revive the judgment by scire facias or action of debt thereupon is in no wise suspended. The same answer may be given to the argument, that the statute is not applicable to a judgment during the suspension of execution by an injunction or appeal; for during that time the judgment is superseded, and no scire facias or action of debt will lie upon it.
There is no principle, therefore, upon which the statute of limitations is inapplicable to a judgment quando acciderint, and there are no considerations of convenience or policy which could have influenced the legislative mind to contemplate such an exception. Ten years from the date of the judgment is sufficient time to enable the plaintiff to enquire into the fact or the probability of subsequent assets ,• and if he wishes to keep his judgment alive beyond that period, he ought to revive it by the proper proceeding. The statute if applicable must from its terms and its spirit commence running from the date of the judgment. If it were to operate only from the time when the future assets accrue, then although none should accrue till the expiration of half a century, the plaintiff would be at liberty to revive his judgment within ten years thereafter, when although the judgment may have been released or discharged, the evidence of the fact has in all probability been lost.
*39 In the case before us, the judgment in question was rendered by confession, “ to be levied of the goods and chattels of the defendant’s testator in the hands of the defendant, if a sufficiency thereof shall remain after the payment of debts of superior dignity.” The case is a much stronger one for the application of the statute than that of a judgment guando acciderint. The judgment subjected the assets then in the hands of the defendant over and above what was necessary to satisfy debts of superior dignity. By this confession of judgment, the defendant admitted that he had assets then in his hands, but surmised that they might be exhausted by debts entitled to preference, and the plaintiffs consented to take their judgment merely as to any surplus. Upon this judgment the plaintiffs might forthwith have prosecuted a scire facias or action of debt, alleging that there was such surplus of assets in the hands of the defendant. If in such a proceeding by scire facias or action of debt, it had been admitted or proved that there were sufficient assets in the hands of the administrator, beyond what was necessary for the payment of the debts of superior dignity, the plaintiffs would have had judgment for execution or recovery of the amount due, to be levied unconditionally of the goods and chattels of the decedent in the hands of the administrator: or if it had been admitted or proved that there were no assets of the decedent in the hands of the administrator beyond what was necessary for the payment of the debts of superior dignity, the plaintiffs might still have had judgment, to be levied of the goods and chattels of the decedent which should thereafter come to the hands of the administrator.
It is true that upon this judgment the plaintiffs could not have taken out execution, any more than upon a judgment quando acciderint, and for the same reason: the defendant might thereby have been subjected to a devastavit, by a levy of the execution; and upon the *40 judgment if assets &c., he had as much right to be heard in a judicial enquiry, as upon a judgment when assets. But though the plaintiffs could not have sued out execution, they might have enforced or revived their judgmeth by a scire facias or action of debt, and the application of the statute turns upon that question.
The foregoing view of the statute conforms, it seems to me, to both its letter and its spoirit, and is indispensable to its certain and wholesome operation. It fixes the date of a judgment against au executor or administrator as the time from which the limitation begins to run, and requires the judgment to be enforced or revived "within the prescribed period, without regard to the state of the assets. If exceptions to the statute, not justified by its language, be allowed in reference to the time when assets properly applicable to the judgment have come to the hands of the executor or administrator, the application of the law will be attended with great uncertainty and difficulty. The matter of fact is one about which the plaintiff in most cases can have but little or no information ; and its decision would often involve a settlement of the whole administration of the estate, it may be after the lapse of many years.
In this case, no execution was in point of fact ever sued out upon the judgment, which was rendered in the year 1811, and no attempt to revive it by scire facias or action of debt has ever been made. The plaintiffs, in the year 1812, filed their bill in equity, for an account ■of assets and payment of the judgment; the effect of which suit was to suspend the operation of the statute of limitations during its pendency. It continued undetermined until the year 1828, when it was dismissed for want of further prosecution; and the present suit was not brought until the year 1832. The suspension of the operation of the statute, effected by the pendency of the former suit in equity, was discontinued by the dismissal of that suit, and was not revived by the institu *41 tion of the present suit, and more than ten years having elapsed from the rendition of the judgment before the institution of the present suit, the demand of the appellee was then, in my opinion, completely barred by the statute of limitations.
The implied charge for the payment of debts created by the will amounted, as regards the personal estate, to nothing more than that which the law itself expressly gives through the medium of the executor, and did not prevent the judgment from being barred by the statute.
I think the decree of the Circuit Court ought to be reversed.
Cabell, P. concurred with Baldwin, J.
Decree reversed, and bill dismissed with costs.

Note by the Judge. In C. Robinson’s Forms, p. 144, edi. of 1841, the form of such an agreement is given. “ After the judgment add: Memorandum. It is ordered to be entered of record, that before the trial of the last cause, the plaintiffs assented to what follows; that is to say, the said plaintiffs agree that their judgment is not to be paid until there shall be a sufficiency of assets in the hands of the defendant, after paying all debts of his decedent of superior dignity, of which he may have notice before the expiration of nine months from the date of the defendant’s qualification as administrator, and after paying all judgments heretofore obtained against the said defendant for debts of equal dignity, and after retaining any debt due from the decedent to the defendant of equal dignity, and paying likewise any debt for which the defendant may be surety for his intestate, that is so evidenced as to be of equal dignity. And the said plaintiffs furthermore agree that this judgment is not to operate as any admission or evidence of assets in the hands of the defendant.”
In the same work, edi. of 1826, p. 77; after the entry of the judgment, there is added, as a part of the entry, as follows; “ and by consent of the plaintiffs by their attorney, this judgment is not to be considered as an admission of assets now in the hands of the defendant.”